IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

SAIED MOUSA RAMADAN,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Civil Action No. 1:14-cv-25757
                                        )
FBOP, *et al.*,                         )
                                        )
        Defendants.                     )

PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 69), filed on February 6, 2015. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 69).

PROCEDURAL BACKGROUND

On October 3, 2013, Plaintiff, acting *pro se*,[1] filed in the District of South Carolina his Complaint alleging violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) Plaintiff names the following as Defendants: (1) FBOP; (2) Charles Samuels, Director of the Federal Bureau of Prisons; (3) C. Eichenlaub, Regional Director of the Mid-Atlantic Regional; (4) Karen F. Hogsten, Warden of FCI McDowell; (5) Mr. Ratelidge,

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Associate Warden of Programs; (6) Mr. Baxter, former Associate Warden of Programs; (7) Mr. Stiller, Captain of FCI McDowell; (8) Gilbert Nash, Chaplain at FCI McDowell; and (9) Mr. Connors, Chaplain at FCI McDowell. (Id., pp. 1 - 2.) Plaintiff alleges that during his incarceration at FCI McDowell and FCI Edgefield, Defendants violated his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ["RLUIPA"]. (Id.) Specifically, Plaintiff states that he is of the Sunni Islamic Faith which "requires followers to pray in congregation, at fixed hours, five times daily." (Id., p. 3.) Plaintiff contends that FCI McDowell and FCI Edgefield's policy "designates only the Chapel and individual cells as permissible spaces for Muslims to pray and forces all Muslims who need to pray while at work, school or recreation to forgo the most important practice of their religion which contradicts B.O.P. national policy and further precludes Mr. Ramadan from offering his obligatory congregational prayers at the stated fixed times and therefore further forces Mr. Ramadan to repeatedly commit a major sin as defined by his Islamic Faith." (Id., p. 4.) Plaintiff argues that the policy violates RLUIPA and RFRA as it "places a substantial burden on Mr. Ramadan's free exercise of religion and does not further a compelling governmental interest." (Id.) Plaintiff complains that although FCI McDowell and FCI Edgefield's policy limits religious activity for all religious groups to specific designated locations, "Defendants permit similarly situated religious groups to routinely pray in locations outside the areas designated for religious activities, while penalizing Muslims for praying outside of their cells or the Chapel." (Id.) Plaintiff alleges that the policy "is in complete contradiction with the F.B.O.P.'s Technical Reference Manual (TRM) on Islamic Religious Beliefs," which "clearly permits Muslim inmates the ability to offer their five obligatory prayers at their stated fixed times in congregation throughout the institution." (Id., p. 5.) Plaintiff further complains that "FCI McDowell's administrative,

executive and general staff acted out in a retaliatory and further discriminatory manner by engineering and implementing a ban on Noble Qurans." (Id.) Plaintiff states that this was "a back-lash for Mr. Ramadan's use of the Administrative Remedy Procedure concerning the aforementioned group prayer." (Id.) Plaintiff requests "injunctive and declaratory relief requesting that Defendants permit him and Muslim prisoners incarcerated with the FBOP in general to be allowed to pray in groups at work detail sites, school, units, and recreation as incumbent upon them per their universally recognized religion - - Islam." (Id.) Plaintiff further requests "exemplary and nominal damages for the defendant's wanton, reckless, malicious and oppressive character of the acts complained of and for invasion and/or violation of his constitutionally protected rights to freely exercise his religion and his right to equal protection under the law." (Id., pp. 5 - 6.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's informal letter to officials at FCI McDowell dated January 9, 2012, concerning congregational prayer (Document No. 1-1, pp. 3 - 5.); (2) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated February 24, 2012, concerning congregational prayer at FCI McDowell (Id., pp. 6 - 7.); (3) A copy of Chaplain Gilbert Nash's Response (Id., pp. 8 - 10.); (4) A copy of Plaintiff's "Request for Administrative Remedy" dated March 8, 2012, concerning congregational prayer at FCI McDowell (Id., pp. 11 - 20.); (5) A copy of Warden Karen F. Hogsten's Response dated March 27, 2012 (Remedy ID No. 680072-F1) (Id., p. 21.); (6) A copy of Plaintiff's Regional Administrative Remedy Appeal dated April 18, 2012, regarding Remedy ID No. 680072-F1 (Id., pp. 22 - 23.); (7) A copy of Regional Director C. Eichenlaub's Response dated June 18, 2012 (Remedy ID No. 680072-R1) (Id., p. 24.); (8) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 5, 2012, regarding Remedy ID No. 680072-R1 (Id., pp. 25 - 26.); (9) A copy of a

"Rejection Notice - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office dated August 24, 2012, concerning Remedy ID No. 680072-A1 (Id., p. 27.); (10) A copy of a letter addressed to General Counsel dated September 6, 2012, regarding the "Rejection Notice" (Id., p. 28.); (11) A copy of the "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office dated October 10, 2012, regarding Remedy ID No. 680072-A3 (Id., p. 29.); (12) A copy of an "Extension of Time for Response - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office dated October 10, 2012, regarding Remedy ID No. 680072-A3 (Id., p. 30.); (13) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated May 25, 2012, regarding his right to take a Nobel Quran into the Chapel at FCI McDowell (Document No. 1-2, p. 3.); (14) A copy of Chaplain Nash's Response dated May 25, 2012 (Id., p. 4.); (15) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated May 30, 2012, concerning Nobel Qurans being allowed in the Chapel at FCI McDowell (Id., pp. 5 - 6.); (16) A copy of Chaplain Nash's Response (Id., p. 7.); (17) A copy of Plaintiff's "Request for Administrative Remedy" regarding his right to take a Nobel Quran into the Chapel at FCI McDowell (Id., p. 8.); (18) A copy of Warden Hogsten's Response dated July 6, 2012 (Remedy ID No. 692848-F1) (Id., p. 9.); (19) A copy of Plaintiff's "Regional Administrative Remedy Appeal" concerning Remedy ID No. 692848-F1 (Id., p. 10.); (20) A copy of Regional Director Eichenlaub's Response dated September 14, 2012 (Remedy ID No. 692848-R1) (Id., p. 11.); (21) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated September 24, 2012, concerning Remedy ID No. 692848-R1 (Id., p. 12.); (22) A copy of Plaintiff's "Informal Resolution Form" dated March 11, 2013, concerning congregational daily prayer at FCI Edgefield (Document No. 1-3, pp. 2 - 3.); (23) A copy of an e-

mail from the Chaplain at FCI Edgefield to Chaplain Mims dated February 20, 2013 (Id., p. 4.); (24) A copy of Plaintiff's "Request to Staff" dated February 15, 2013, concerning congregational daily prayer at FCI Edgefield (Id., p. 5.); (25) A copy of Plaintiff's "Request for Administrative Remedy" dated February 28, 2013, regarding congregational daily prayer at FCI Edgefield (Remedy ID No. 726558-F1) (Id., p. 6.); (26) A copy of Warden Kenny Atkinson's Response dated April 5, 2013 (Remedy ID No. 726558-F1) (Id., p. 7.); (27) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated April 16, 2013, concerning Remedy ID No. 726558-F1 (Id., p. 8.); (28) A copy of the Regional Director's Response dated June 11, 2013 (Remedy ID No. 726558-R1) (Id., p. 9.); (29) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 1, 2013, concerning Remedy ID No. 726558-R1 (Id., p. 10.); (30) A copy of the a "Memorandum for All Concerned" from Warden Atkinson regarding "Inmate Workplace Prayer" dated May 28, 2013 (Id., pp. 11 - 12.); (31) A copy of Plaintiff's "Informal Resolution Form" dated August 27, 2013, complaining that he was being "severely restricted" from accessing the law library at FCI Edgefield (Id., pp. 13 - 14.); (32) A copy of a "Memorandum for Inmate Population" from the Supervisor of Education, Valarie A. Kepner, regarding "Use of Libraries" dated August 7, 2013 (Id., p. 15.); (33) A copy of a "Memorandum for T. Koger, Unit Manager" from the Supervisor of Education dated August 27, 2013, regarding the BP-8 Response to Plaintiff's complaint of restricted access to the law library at FCI Edgefield (Id., pp. 16 - 17.).

By Order entered on September 12, 2014, the District of South Carolina transferred the above case to this District. (Document No. 32.) On September 29, 2014, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process upon Defendants. (Document No. 36.) On November 13, 2014, Plaintiff filed a "Motion

Seeking Permission to Amend Complaint" requesting "to add as a Defendant: Kenney Atkinson, individually and in his official capacity as the former Warden at the Federal Correctional Institution, Edgefield." (Document No. 46.) By Order entered on November 18, 2014, the undersigned granted Plaintiff's Motion to Amend. (Document No. 53.)

On February 6, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 69 and 70.) Defendants contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "There is a lack of personal jurisdiction over Defendants Samuels, Eichenlaub, and Atkinson" (Document No. 70, pp. 10 - 12.); (2) "This Court is not the proper venue for claims related to FCI Edgefield South Carolina" (Id., p. 12.); (3) RLUIPA does not apply to federal actors (Id.); (4) "No Bivens action may be brought against the BOP" (Id., pp. 12 - 13.); (5) "The Defendants cannot be sued in their official capacities" (Id., p. 13.); (6) "Plaintiff failed to exhaust his administrative remedies for all claims" (Id., pp. 13 - 19.); (7) "Plaintiff cannot recover for emotional or psychological damages without showing of physical injury" (Id., pp. 19 - 20.); (8) "Money damages are not available under RFRA" (Id., pp. 20 - 21.); (9) "Plaintiff's claims seeking injunctive and declaratory relief under RFRA and the Constitution are moot and must be dismissed" (Id., pp. 21 - 23.); (10) "The Supreme Court has never established a Bivens implied damage remedy under the First Amendment" (Id., pp. 23 - 24.); (11) "Plaintiff's claims do not rise to constitutional violations" (Id., pp. 24 - 33.); and (12) "The Defendants are entitled to qualified immunity" (Id., pp. 33 - 36.).

In support, Defendants filed the following Exhibits: (1) The Declaration of Sharon Wahl (Document No. 69-1, pp. 2 - 5.); (2) A copy of Plaintiff's Administrative Remedy History (Id., pp. 7 - 20.); (3) A copy of Administrative Remedy ID No. 680072 (Id., pp. 22 - 38.); (4) A copy of

Administrative Remedy ID No. 692848 (Id., pp. 40 - 46.); (5) A copy of Administrative Remedy ID No. 705960-F1 (Id., pp. 48 - 50.); (6) A copy of Administrative Remedy ID No. 726558 (Id., pp. 52 - 55.); (7) The Declaration of G. Nash (Document No. 69-2, pp. 2 - 5.); (8) A copy of relevant pages from Institution Supplement, MCD 5360.09A, Religious Beliefs and Practices (Id., p. 7.); (9) A copy of Program Statement 5360.09, Religious Beliefs and Practices (Id., pp. 9 - 30.); (10) The Declaration of Gerald Connors (Document No. 69-3.); and (11) The Declaration of Terry Stiller (Document No. 69-4.).

On February 26, 2015, Plaintiff filed his Response in Opposition. (Document No. 74.) As Exhibits, Plaintiff attaches the following: (1) A copy of a "Complaint for Injunctive and Declaratory Relief, Monetary Damages and Attorneys' Fees" as filed in the United States District Court for the Middle District of Pennsylvania in Gartrell v. Federal Bureau of Prisons, Case No. 1:10-cv-2160 (M.D.Pn.) (Document No. 74-1, pp 1 - 23.); (2) A copy an Order entered by United States District Court Judge William W. Cadwell entered in Gartrell v. Federal Bureau of Prisons, Case No. 1:10-cv-2160 (M.D.Pn.) (Id., pp. 25 - 29.); (3) A copy of a letter addressed to Plaintiff from the Federal Bureau of Prisons dated August 7, 2012, concerning Freedom of Information Act request (Document No. 74-2, p. 2.); (4) A copy of the Islamic Religious Practices section of the BOP's "Practical Guidelines for Administration of Inmate Religious Beliefs and Practices" (Id., pp. 3 - 20.); (5) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated September 24, 2012 (Remedy ID 692848-A1) (Document No. 74-3, p. 2.); (6) A copy of Administrator Harrell Watts' Response dated October 22, 2013 (Remedy ID 692848-A1) (Id., pp. 3 - 4.); (7) A copy of Plaintiff's Central Office Administrative Remedy Appeal dated July 6, 2012 (Remedy ID 680072) (Id., pp. 6 - 7.); and (8) A copy of Administrator Harrell Watts' Response dated February 4, 2013 (Remedy ID

680072-A3) (Id., p. 8.). On March 6, 2015, Plaintiff filed a letter-form Response in Further Opposition stating that he "didn't understand all of the government's legal arguments about RLUIPA, RFRA, Bivens, official capacity, and qualified immunity." (Document No. 75.)

## FACTUAL HISTORY

Plaintiff was incarcerated at FCI McDowell from November 17, 2011, until December 6, 2012, when he was transferred to FCI Edgefield. (Document No. 69-2, p. 2.) Plaintiff complains that Defendants improperly denied him the right to engage in congregational prayer five times per day and from taking a copy of the Noble Quran (or Hilaki-Kan translation) into the Chapel. The Bureau of Prisons' ["BOP"] "provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons. 28 C.F.R. § 548.10(a) and Program Statement ["P.S."]5360.09. "Institution chaplains are responsible for managing religious activities within the institution." P.S. 5360.09, § 10, p. 6. Chaplains "plan, direct and supervise all aspects of the religious program and have physical access to all areas of the institution to minister to inmates and staff. Id., p. 7.Chaplains are required to "lead worship services," "provide professional spiritual leadership and pastoral care," "accommodate the legitimate religious needs of inmates," and "supervise institution religious activities." Id. All "inmate-led religious programs require constant staff supervision." Id., § 7(d). Institutions are required to "have space designated for the conduct of religious activities." 28 C.F.R. § 548.13 and P.S. 5360.09 § 11. The BOP has developed "Practical Guidelines for Administration of Inmate Religious Beliefs and Practices." (Document No. 74-2.) Concerning guidelines for the Muslim faith, the religious practices provides that Muslims perform proscribed prayers five times daily and the "prayers can be made

individually." (Id., p. 4.) Concerning "daily prayers," the Guidelines stated as follows:

- Inmates should have the opportunity to pray five times daily.
- Other than Jumu'ah, it is recommended that prayers be made individually or in very small groups (2 or 3 inmates).
- Prayers can be made at work detail sites, school, or units during break times.
- Prayers require a clean area, prayer rug, or clean towel to cover the floor.

(Id., p. 5.) In describing the theology of Muslim prayer, the Guidelines provide that "Salat, the formal ritual prayer, must be prayed five times daily" and "Friday noon prayer, called Jumu'ah, is an obligatory congregational prayer." (Id., p. 16.) Inmates are allowed to possess the Holy Quran as a personal religious item. (Id., p. 7.) The Holy Quran is defined as the Arabic text, but "[v]arious reliable English or English/Arabic versions are available for inmate use." (Id., p. 9.)

Each institution develops an Institution Supplement for operating religious programs and activities. P.S. 5360.09 § 20. FCI McDowell chose the individual prayer option. Specifically, FCI McDowell's policy states as follows:

COMMUNITY/GROUP PRAYER: Inmates are only allowed to pray as a group within the Chapel (FCI) or Multipurpose Room (Camp) or outdoor worship areas during times scheduled by the Religious Services Department. Community/group prayer is not permitted in areas other than those designated by Religious Services.

(Document No. 69-2, p. 7.) The foregoing policy is "an all-inclusive policy and there are no exceptions for any religious group." (Id., p. 2.) FCI McDowell "prohibits inmates from gathering together in groups outside of the areas designated by Religious Services because of the security concerns that exist when inmates are unsupervised in groups." (Id.) Muslim inmates at FCI McDowell are provided the following opportunities to practice their faith: (1) weekly Jumu'ah study and prayer every Friday in the Chapel; (2) an additional weekly study time in the chapel; (3) the 29 - 30 day yearly observance of Ramadan where Muslim inmates gather daily for group prayer time and study, and depending upon the time of sun set are allowed to go to the dining hall for a later dinner;

(4) a separate yearly ceremonial meal; (5) ability to purchase and use prayer rugs in their cells or in the Chapel; (6) use of prayer oils; (7) ability to wear religious clothing such as the Kufi; and (8) individual prayer opportunities in their cells or work areas. (Id., p. 3.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's

subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

**1.     Lack of Personal Jurisdiction Over Defendants Samuels, Eichenlaub, and Atkinson:**

In their Motion, Defendants argue that this Court lacks personal jurisdiction over Defendants Samuels, Eichenlaub, and Atkinson. (Document No. 69 and Document No. 70, pp. 10 - 12.) Specifically, Defendants Samuels, Eichenlaub, and Atkinson contend that they "are non-residents of West Virginia and have not had sufficient contact with the state of West Virginia such that they should be required to defend this action in West Virginia." (Document No. 70, p. 10.) Defendants claim that "Director Samuels and Regional Director Eichenlaub are named solely because of their positions and not because of any action taken in West Virginia." (Id., p. 11.) Defendants assert that "Warden Atkinson is named because he was the former Warden of FCI Edgefield, South Carolina, where Plaintiff was housed following his incarceration at FCI McDowell, and not because of any contact he had with West Virginia." (Id.) Defendants Samuels, Eichenlaub, and Atkinson argue that they should be dismissed because they have not had sufficient minimum contacts with the State of West Virginia for this Court to have personal jurisdiction over them. (Id., p. 12.)

In Response, Plaintiff first states that he "initially filed this suit in South Carolina and it was then transferred to West Virginia."(Document No. 74, p. 5.) Next, Plaintiff states that the FBOP operates to some degree in all 50 states, and "then descending from that I or anybody else should be able to name any of the FBOP facilities or employees as defendants." (Id., p. 6.) Third, Plaintiff argues that Defendant Atkinson "continued to implement the exact same severe restrictions on a Muslim inmates' religious obligation to pray five times a day in congregation as had the named

defendants at FCI McDowell." (Id.) Finally, Plaintiff argues that both West Virginia and South Carolina are within the jurisdiction of the Fourth Circuit. (Id.)

Two conditions must be satisfied for a District Court to assert personal jurisdiction over a non-resident defendant: (1) A state long-arm jurisdiction statute must authorize jurisdiction over the non-resident defendant; or (2) The court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." Mylan Lab, Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993); In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997). Since "the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." In re Celotex Corp., 124 F.3d at 627-28 (citation omitted); also see York v. Property and Casualty Ins. Co. of Hartford, 2013 WL 5504435 (S.D.W.Va. Oct. 3, 2013)("the statutory inquiry mergers with the constitutional inquiry, and the two inquires essentially become one.) Therefore, the court's inquiry centers on whether the exercise of personal jurisdiction over the non-resident defendant is consistent with the Due Process Clause.

It is well established that the exercise of personal jurisdiction over the non-resident defendant is consistent with the Due Process Clause "if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" In re Celotex Corp., 124 F.3d at 628(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When assessing the "minimum contacts," courts should consider whether the defendant's contacts with the forum also provides the basis for the suit. Carefirst of Maryland, Inc., v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003). If the defendant's contact with the forum

13

state provides the basis for the suit, Courts may exercise what is known as "specific jurisdiction." Id. To determine whether specific jurisdiction exists, the Court should consider the following: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. If the defendant's contact with the forum state does not provide the basis for the suit, a court may only exercise "general jurisdiction." Id. General jurisdiction is appropriate only where the defendant's contacts with the forum are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The record reveals that Defendant Samuels is the Director of the FBOP, Defendant Eichenlaub is the Regional Director of the Mid-Atlantic Region of the FBOP, and Defendant Atkinson is the former Warden of FCI Edgefield. It is undisputed that the foregoing Defendants are nonresidents of West Virginia. (Document No. 69-1, p. 2.) Plaintiff alleges that Defendant Samuel "manages the day to day operations of the facilities Bureau wide, and therefore sets forth and regulates policies." (Document No. 1, p. 7.) Plaintiff contends that Defendant Eichenlaub "manages the day to day operations of the FBOP's Mid-Atlantic Regional and executes its policies." (Id.) Plaintiff fails to allege any personal action by Defendants Samuel and Eichenlaub in West Virginia that resulted in a violation of his rights. All allegations asserted by Plaintiff against Defendant Atkinson occurred in South Carolina. (Document No. 46.) Plaintiff, therefore, fails to allege any type of contact between the State of West Virginia and the above Defendants. Accordingly, Defendants Samuel, Eichenlaub, and Atkinson should be dismissed because this Court lacks personal jurisdiction over them.

2.      **RLUIPA Claim:**

In their Motion, Defendants argue that Plaintiff's RLUIPA claim must be dismissed because it does not apply to federal actors. (Document No. 69 and Document No. 70, p. 12.) Defendants claim "RLUIPA only applies to state governments and state actors, and it does not apply to federal actors." (Document No. 70, p. 12.) Accordingly, Defendants argue that Plaintiff's RLUIPA claims must be dismissed. (Id.) Plaintiff does not address the foregoing issue in his Response. (Document No. 74.)

In <u>City of Boerne v. Flores</u>, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court invalidated the Religious Freedom Restoration Act ["RFRA"] as it applied to States. <u>City of Boerne v. Flores</u>, 521 U.S. 507, 536, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997). In response to the decision in <u>City of Boerne</u>, Congress enacted the Religious Land Use and Institutionalized Persons Act ["RLUIPA"]. 42 U.S.C. 2000cc, *et seq.* RLUIPA is the "state-prison analog" to the RFRA. <u>Godbey v. Wilson</u>, 2014 WL 794274, * 4 (E.D.Va. Feb. 26, 2014). The Fourth Circuit explained that the Congress "created a parallel statutory scheme, using virtually identical language, in which 'RFRA continue[s] to apply to the federal government' and RLUIPA 'mirror[s] the provisions of RFRA' in suits against the states concerning land regulation or institutionalized persons." <u>Lebron v. Rumsfeld</u>, 670 F.3d 540, 557 (4th Cir. 2012), <u>cert. denied</u>, ___ U.S. ___, 132 S.Ct. 2751, 183 L.Ed.2d 616 (2012). The undersigned notes that it is undisputed that Petitioner is in federal custody and that all named Defendants are federal actors. Accordingly, Plaintiff's RLUIPA claim against Defendants should be dismissed. See <u>Godbey</u>, 2014 WL 794274 at 4("Plaintiff's claim pursuant to RLUIPA and § 1983 must be dismissed for failure to state a claim because those provisions provide remedies in federal court only against state actors"); <u>Sturdevant</u>

15

v. Holder, 2010 WL 3210961, * 3 (N.D.W.Va. Aug. 10, 2010)(finding that a RLUIPA claim by a federal inmate in federal custody was improper). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment be granted concerning Plaintiff's RLUIPA claim.

**3.        Defendants Cannot be Sued in their Official Capacities:**

In their Motion, Defendants first argue that "no Bivens action may be brought against the BOP." (Document No. 69 and Document No. 70, pp. 12 - 13.) Next, Defendants argue that they cannot be sued in their official capacities. (Id.) Defendants, therefore, request that all Bivens claims against Defendants in their official capacities be dismissed. (Id.) Respondent failed to address the foregoing issue in his Response. (Document No. 74.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United

16

States Supreme Court has held that an inmate may name a federal officer in an individual capacity

as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, Bivens claims

are not actionable against the United States, federal agencies, or public officials acting in their

official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308

(1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355

n. 7 (4th Cir. 1999).

Based upon the foregoing, the undersigned finds that Plaintiff's Bivens action against the

BOP and its employees in their official capacities should be dismissed. In his Complaint, Plaintiff

names the BOP as a Defendant and the remaining Defendants are sued in their individual and official

capacities. (Document No. 1.) Federal inmates may file claims of personal liability against

individual prison officials for violations of their constitutional and civil rights pursuant to Bivens,

but may not assert claims against the government or prison officials in their official capacities. The

BOP is not a "person" as required by Bivens. As stated above, federal agencies are not proper

defendants under Bivens. Furthermore, Bivens claims are not actionable against defendants acting

in their official capacities. See Meyer, 510 U.S. at 485; also see Doe v. Chao, 306 F.3d 170 (4th Cir.

2002)( "[A] Bivens action does not lie against either agencies or officials in their official

capacities"). Accordingly, the Court respectfully recommends that Plaintiff's Bivens claim against

the BOP and Defendants in their official capacities be dismissed.

**4.      Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust

available administrative remedies prior to filing civil actions though the administrative process may

17

not afford them the relief they might obtain through civil proceedings.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

  If an inmate exhausts administrative remedies with respect to some, but not all, of the claims

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had

available remedies which he did not exhaust. See <u>Dale v. Lappin</u>, 376 F.3d 652, 655 (7th Cir.

2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing

a <u>Bivens</u> suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have

the burden of pleading and proving." (Citations omitted))

      For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that

"a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's

administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also</u> <u>see</u>

<u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure

on the course of its proceedings"). The BOP has established an Administrative Remedy Program,

28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints

relating to confinement. Depending upon at what level an inmate initiates it, the BOP's

Administrative Remedy Program is a three-step or four-step grievance procedure. As a general

matter, a federal inmate is required first to attempt to resolve his complaints informally by the

submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request

may be rejected if improper, and the inmate will then be advised of the proper administrative

procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's

complaints, the inmate must complete this first step and submit a formal "Administrative Remedy

Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28

C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional

Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to

the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants acknowledge that Plaintiff exhausted his administrative remedies concerning congregational prayer five times per day and the alleged ban on the Noble Quran translation at FCI McDowell. (Document No. 70, p. 13.) Defendants, however, contend that Plaintiff did not exhaust his administrative remedies regarding retaliation by staff at FCI McDowell, congregational prayer at FCI Edgefield, and his equal protection claims. (Id., pp. 14 - 15.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 69-1.) Ms. Wahl states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Ms. Wahl explains that she also

has access to inmates' Central Files. (Id.) Specifically, Ms. Wahl states as follows in her Declaration

(Id., pp. 1 - 2.):

7.      Plaintiff exhausted his administrative remedies regarding congregational prayer and the alleged ban on the Noble Quran translation at FCI McDowell. However, Plaintiff failed to file administrative remedies alleging retaliation by staff at FCI McDowell and congregational prayer at FCI Edgefield, and Plaintiff did not fully exhaust his equal protection claims.

* * *

22.     While at FCI McDowell, Plaintiff filed additional remedies related to religious beliefs, but he did not pursue these claims past the institutional level. Specifically, Plaintiff filed Administrative Remedy ID No. 698999-F1 on August 1, 2012, wanting to know why certain religious practices were banned. The remedy was rejected at the institution because he did not attempt or show proof that he filed an informal resolution first. Plaintiff did not appeal this rejection.

23.     Plaintiff also filed Administrative Remedy ID No. 705960-F1 on September 24, 2012, wanting to know why, during the month of Ramadan, he had not been allowed access to hot water to prepare coffee and hot meals, access to real milk, and why he could not pray in congregational prayer. He also wanted to know why, for a period of time, they had not been allowed to bring their Nobel Qurans into the chapel. The remedy response explained the breakfast procedures, explained the policy on group prayer, and informed Plaintiff that he could bring the Nobel Quran into the chapel and that the Nobel Quran was not a restricted book. Plaintiff did not appeal this response.

24.     Plaintiff's other remedies do not involve FCI McDowell staff or complaints related to that institution. Additionally, SENTRY reveals that Plaintiff has not filed any other Central Office appeals other than a complaint about a herniated disc.

25.     Regarding Plaintiff's claims about FCI Edgefield, Plaintiff did not exhaust his administrative remedies related to these claims. On March 18, 2013, Plaintiff filed Administrative Remedy ID No. 726558-F1 at FCI Edgefield, alleging that when he first arrived at the facility he was allowed congregational prayer five times per day, but was thereafter prohibited from congregational prayer. On April 5, 2013, the institution responded and noted that their investigation revealed only Jumah prayer on Friday was an obligatory prayer, and that all other daily prayers could be made individually.

26.     Plaintiff filed an appeal, Administrative Remedy ID No. 726558-R1, on April 23, 2012. The appeal was denied on June 11, 2013, as the only obligational congregational prayer was Jumah prayer. Plaintiff did not appeal that claim to the Central Office.

(Id., pp. 2 - 4.). Defendants, therefore, argue that Plaintiff failed to exhaust his administrative remedies concerning his equal protection claim, his retaliation claim, and claims related to FCI Edgefield. (Document No. 70, p. 19.)

In response, Plaintiff first states that he did not exhaust his claim of retaliation because "at the immediate time of the ban, I didn't see it as retaliation." (Document No. 74, pp. 3 - 4.) Next, Plaintiff states that he "meticulously followed the FBOP's policy on the filing of Administrative Remedies and their appeals." (Id., p. 16.) Plaintiff states that he "went above and beyond policy and what I'm required to do by attempting to open dialogues with staff members and composing letters to help educate and explain to staff members the problems at hand." (Id.) Third, Plaintiff complains that the Central Office sent him untimely responses to his appeals concerning congregational prayers and the ban on the Noble Quran. (Id., p. 17.) Plaintiff alleges that "[t]o this day, I'm still waiting on the response to the Central Office appeal concerning congregational prayer at FCI Edgefield." (Id.) Plaintiff contends that he did fully exhaust his administrative remedies and he attached "all grievances and subsequent appeals to the initial complaint." (Id.)

Based on the foregoing, the undersigned finds that Plaintiff fully exhausted his claims concerning congregational prayer at FCI McDowell (Remedy ID 680072) and the alleged ban on the Noble Quran at FCI McDowell (Remedy ID 692848). Plaintiff, however, failed to exhaust his equal protection claim, his retaliation claim, and his claim concerning congregational prayer at FCI Edgefield. Although Plaintiff contends that he fully exhaust his administrative remedies concerning all of the foregoing claims, the record does not support such a finding by the Court. In support of

his claim that all claims are exhausted, Plaintiff states that he attached "all grievances and subsequent appeals to the initial complaint." (Document No. 74, p. 17.) The undersigned has thoroughly reviewed all documents submitted by Plaintiff and finds no indication Plaintiff fully exhausted his retaliation or equal protection claims. (Document Nos. 1-1, 1-2, and 1-3.) Concerning congregational prayer at FCI Edgefield (Remedy ID 726558), Plaintiff's Exhibits support only a finding that he completed the "Central Office Administrative Remedy Appeal" form. (Document No. 1-3, p. 10.) The record, however, does not support Plaintiff's claim that the Central Office received his appeal and failed to timely respond. Plaintiff does not attach a copy of a "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at the Central Office concerning Remedy ID 726558. Additionally, a review of the "Administrative Remedy Generalized Retrieval" reveals that no appeal by Plaintiff concerning Remedy ID 726558 was received by the Central Office. (Document No. 69-1, pp. 7 - 20.) Claims are precluded if not raised at all three levels of the administrative remedy process. Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010). The undersigned, therefore, finds that Plaintiff failed to fully exhaust his claim concerning congregational prayer at FCI Edgefield (Remedy ID 726558). Based on the foregoing, the undersigned respectfully recommends that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted as to Plaintiff's equal protection claim, retaliation claim, and his claim concerning congregational prayer at FCI Edgefield.

**5.      Emotional or Psychological Damages:**

In their Motion, Defendants argue that Plaintiff's claim for emotional or psychological damages should be dismissed. (Document No. 69 and Document No. 70, pp. 19 - 20.) Defendants

argue that "[u]nder the PLRA, no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Document No. 70, p. 19.) Defendants claim that "Plaintiff does not allege any physical injury." (Id.) Defendants, therefore, argue that Plaintiff's claim should be dismissed because compensatory damages for alleged emotional or mental injuries are not permitted in Bivens. (Id.) Plaintiff failed to address the above issue in his Response. (Document No. 74.)

The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than de minimis. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).

In his Complaint, Plaintiff requests nominal damages for the alleged violation of his constitutional rights. (Document No. 1, p. 5 and Document No. 2, p. 13.) Plaintiff, however, fails

to allege any facts supporting the existence of a physical injury as the result of Defendants' conduct. Plaintiff's conclusory allegation that he is entitled to damages is inadequate. To the extent Plaintiff is requesting money damages for emotional or psychological damages, the Court finds that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted.

**6.     Claim for Monetary Damages under RFRA:**

In their Motion, Defendants argue that money damages are not available under RFRA. (Document No. 69 and Document No. 70, pp. 20 - 21.) Defendants, therefore, contends that Plaintiff's claim for money damages under RFRA must be dismissed. (Id.) Plaintiff fails to address the foregoing issue in his Response. (Document No. 74.)

RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb-1(a). Subsection (b) provides that the Government may substantially burden a person's exercise of religion if it demonstrates that the application of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). RFRA's waiver of the federal government's sovereign immunity, however, does not extend to monetary damages. Oklevueha Native American Church of Hawaii, Inc. v. Holder, 676 F.3d 829, 840-41 (9th Cir. 2012)("Just like the identical language in RLUIPA, RFRA's authorization of 'appropriate relief' is not an 'unequivocal expression' of the waiver of sovereign immunity to monetary claims."); Webman v. Federal Bureau of Prisons, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006)("RFRA does not waive the federal government's sovereign immunity for damages."); Somie

26

v. GEO Group Inc., 2012 WL 1596725, * 4 (E.D.N.C. May 7, 2012)(finding that "plaintiff's RFRA claims are barred pursuant to sovereign immunity"). Although the Fourth Circuit has not specifically addressed the above issue, the Fourth Circuit has determined that RLUIPA does not authorize claims for monetary damages. Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); also see Sossamon v. Texas, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011)(finding that States did not waive "their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver"); Patterson v. West Virginia Regional Jail and Correctional Facility Authority, 2012 WL 3308607, * 7, fn. 7 (S.D.W.Va. July 3, 2012)(noting that plaintiff's RLUIPA claim failed because he asked only for money damages, which are not available under the act). RFRA and RULIPA cases are relied upon interchangeably because of their substantial similarity. Kyles v. Atkinson, 2014 WL 4249878 (D.S.C. Aug. 26, 2014); also see Lebron v. Rumsfeld, 670 F.3d 540, 557 (4th Cir. 2012), cert. denied, ___ U.S. ___, 132 S.Ct. 2751, 183 L.Ed.2d 616 (2012)(stating that the Congress "created a parallel statutory scheme, using virtually identical language, in which 'RFRA continue[s] to apply to the federal government' and RLUIPA 'mirror[s] the provisions of RFRA' in suits against the states concerning land regulation or institutionalized persons.") Based on the foregoing, the undersigned finds that Plaintiff's RFRA claim for monetary damages should be dismissed.

**7.**     **Request for Injunctive and Declaratory Relief:**

In their Motion, Defendants argue that "Plaintiff's claims seeking injunctive and declaratory relief under RFRA and the constitution are moot and must be dismissed." (Document No. 69 and Document No. 70, p. 21.) Defendants state that Plaintiff seeks injunctive relief allowing him to pray in congregational prayer five times per day. (Document No. 70, p. 21.) Defendants explain that

27

"Plaintiff was transferred from FCI McDowell to FCI Edgefield, South Carolina, and has since transferred from FCI Edgefield to FMC Butner, North Carolina." (Id.) Defendants contend that "Plaintiff's transfer from FCI McDowell makes his request for injunctive and declaratory relief under both Bivens and RFRA moot." (Id., p. 22.)

In Response, Plaintiff argues that his "complaint is not just about prayer policies at FCI McDowell and FCI Edgefield, [but] my complaint is mainly about the lack of clear and definite policy by the FBOP as the governing entity of FCI McDowell and FCI Edgefield or the enforcement of such policy (i.e. T.R.M. 5360.01.)." (Document No. 74, p. 7.) Plaintiff further states that his "complaint is also primarily about the FBOP's failure - - especially defendants Samuels and Eichenlaub - - failure to respond and interceded in the issues raised in my administrative remedy procedure concerning congregational prayers as allowed by both FCI McDowell and FCI Edgefield." (Id.) Plaintiff asserts that inmates incarcerated that FCI Yazoo, FCI Beaumont, FMC Lexington, FCI Marianna, FCI Jesup, and FMC Butner allow inmates to engage in congregation prayer pursuant to TRM 5360.01, while FCI McDowell and FCI Edgefield do not. (Id.) Plaintiff contends that another BOP facility may not allow him to pray in congregation in accordance with TRM 5360.01. (Id., pp. 7 - 8.) Plaintiff states that even though he is currently incarcerated that FCI Butner, the "warden who is currently in charge of this institution is defendant Kenny Atkinson." (Id., p. 8.) Plaintiff contends that Defendant Atkinson is the former warden of FCI Edgefield, who "engineered, introduced and enforced the harshest, most strict and outright anti-Muslim discriminatory type prayer policy imagined." (Id.) Plaintiff notes that he has been at FCI Butner for four months and Defendant Atkinson has been at FCI Butner for ten months. (Id.) Plaintiff, however, acknowledges that "I and the Muslims at this institution have been allowed to pray in congregation

28

as per the T.R.M. 5360.01 on Islamic Religious Beliefs and Practices." (Id., pp. 8 - 9.) Plaintiff states that he fears FCI Butner will stop or restrict such activity in the future. (Id., p. 9.)

Under Article III, Section 2 of the Constitution of the United States, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998)(quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990)). This case or controversy requirement means that plaintiff must continue to have a personal stake in the outcome of the civil action when the Complaint is filed and when the case is decided. Id.; also see Arizonans for Official English v. Arizona, 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)("The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence.") If at any point in the proceeding there is no actual controversy, the case must be dismissed as moot. Id. In general, therefore, claims for injunctive relief become moot when the inmate is no longer incarcerated because the inmate is no longer subjected to the condition of which he complained. Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983); also see Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007)("The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.")

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." Federal Election Commission v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). For this exception to apply, Plaintiff must demonstrate that his claim for injunctive relief possesses the following characteristics: (1) the duration of the

29

challenged actions were too short to be fully litigated prior to their cessation or expiration, and (2) a reasonable expectation exists that Plaintiff will be subjected to the same actions again. Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). The second characteristic requires that the same prisoner face the same alleged wrong at the same prison. Wolf v. Anderson, 2006 WL 218205, *3 (S.D.W.Va. Jan. 25, 2006)(J. Faber). Mere conjecture, however, that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception. Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996).

Having examined Plaintiff's Complaint, the Court finds that Plaintiff challenges the conditions of his confinement at FCI McDowell. Plaintiff's transfer from FCI McDowell, however, destroys the "case or controversy" requirement concerning his claims requesting injunctive relief. Specifically, Plaintiff requested that the Court order Defendants to allow him to engage in congregational prayer at FCI McDowell. Plaintiff is currently incarcerated at FMC Butner and acknowledges that he is allowed to engaged in daily congregational prayer. Although Plaintiff states that he fears he may be prohibited from engaging in congregational prayer in the future, he cannot satisfy the "capable of repetition, yet evading review" exception to the mootness doctrine. First, the duration of the challenged action is not too short to be fully litigated prior to its cessation or expiration. Second, there is no reasonable expectation that Plaintiff will be subjected to the same actions again. Although the BOP policy allows each institution the option of allowing inmates to engage in individual daily prayer or daily prayer in small groups (2 to 3 inmates), Plaintiff can point to no "reasonable expectation" that he will be transferred or subjected to the requirement of individual daily prayer. Thus, Plaintiff's claim for injunctive and declaratory relief is rendered moot by his transfer from FCI McDowell. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.

30

1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.");
Taylors v. Rogers, 781 F.2d 1047, 1048, n. 1 (4th Cir. 1986)(finding that a prisoner's transfer mooted his request for declaratory and injunctive relief). Clearly, injunctive and declaratory relief would have no impact on Plaintiff's rights or redress his claim of injuries. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted as to Plaintiff's request for injunctive or declaratory relief.

### 8.    Claim for Monetary Damages under Bivens:

In their Motion, Defendants argue that "Plaintiff's First Amendment claim for money damages is not cognizable under Bivens and should be dismissed." (Document No. 69 and Document No. 70, p. 23.) Specifically, Defendants state that "the Supreme Court has repeatedly pointed out its reluctance to extend Bivens claims generally and has specifically stated that it never extended Bivens claims to include First Amendment claims." (Id., p. 24.) Defendants, therefore, contend that "Plaintiff's First Amendment claim for money damages should be dismissed." (Id.) Plaintiff failed to address the foregoing issue in his Response. (Document No. 74.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971); also see Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.).The United States Supreme Court expressly recognized that Bivens remedies were restricted to claims arising under

31

the Fourth, Fifth, and Eighth Amendments to the United States Constitution. Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001). The Supreme Court has further explained that a Bivens remedy does not lie where (1) Congress provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where defendants demonstrate "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson, 446 U.S. at 18-19, 100 S.Ct. at 1471; Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(stating that the "Court has therefore on multiple occasions declined to extend *Bivens* because Congress is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability.") Recently, the Fourth Circuit has recognized that "the Supreme Court has long counseled restraint in implying new remedies at law" and "[s]uch restrain counsels that we review a plaintiff's invitation to imply a *Bivens* action . . . with skepticism." Cioca v. Rumsfeld, 720 F.3d 505, 509 (4th Cir. 2013)(quoting Lebron v. Rumsfeld, 670 F.3d 540, 548 (4th Cir. 2012).

In Ashcroft v. Iqbal, the Supreme Court stated that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948, citing Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); also see Reichle v. Howards, ___ U.S. ___, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); Malesko, 534 U.S. at 67-68, 122 S.Ct. at 519-20 (noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"). A Bivens damages claim sounding in the First Amendment arguably has not been recognized by the Supreme Court because prisoners may pursue

such claims under the FTCA or seek injunctive relief based on the federal courts' equity jurisdiction to prevent the violation of constitutional rights. See Wilkie v. Robbins, 551 U.S. 537, 550, 125 S.Ct. 2588, 2598, 168 L.Ed.2d. 389 (2007); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 *1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); also see 42 U.S.C. § 1997e(e)(prisoners are not entitled to money damages where no physical injury is shown). Based upon the foregoing, the undersigned finds that there is no damage remedy under Bivens for alleged violations of the First Amendment. See Turkmen v. Hasty, 789 F.3d 218, 236 (2nd Cir. 2015)(Damages remedy under Bivens was not available to detainees in federal custody based upon their claim that officers interfered with their prayer and access to copies of the Quran in violation of their rights under the Free Exercise Clause); Clinton v. Brown, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015)(finding that Plaintiff's allegation of a violation of his First Amendment right to freedom of religion was an unrecognized claim under Bivens); Heap v. Carter, 2015 WL 3999077 (E.D.Va. July 1, 2015)(no implied cause of action for damages under Bivens for alleged violations of the First Amendment); Blackman v. Torres, 2013 WL 941830, * 2 (D.Colo. March, 11, 2013)(dismissing the damages aspect of plaintiff's First Amendment claim); DeBrew v. Brooks, 2011 WL 9933745, * 3 (E.D.N.C. July 22, 2011)(Plaintiff is not entitled to monetary relief on his First Amendment claim), aff'd, 475 Fed. Apex. 479 (4th Cir. 2012). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted as Plaintiff's Bivens claim for monetary damages. The undersigned finds it unnecessary to consider the other reasons which the

Defendants have submitted for dismissal.[3]

───────────────────

[3] Notwithstanding the foregoing, the undersigned will briefly consider Plaintiff's exhausted claims concerning congregational daily prayer and the Noble Quran. First, the undersigned will consider Plaintiff's claim that he was prevented from engaging in congregational prayer five times daily. Plaintiff acknowledges that he was allowed to engage in individual prayer five times daily. Defendants argue that there is no violation of Plaintiff's right because there is a legitimate and compelling penological interest of supervising inmates and maintaining the security of the institution. It is well recognized that when security concerns exist, it is permissible for institutions to restrict daily prayer, other than Jumu'ah, to individual prayer. *See Jackson v. McBride*, 2007 WL 2815447, * 7 - 8 (S.D.W.Va. Sept. 25, 2007)(finding no RLUIPA or First Amendment violation because the prisons' policy restricting Muslim inmates from gathering on the outdoor recreation yard did not substantially burden Plaintiff's right to practice the Islamic faith and the policy was in furtherance of a compelling government interest that order and safety be maintained); *Parker v. Trent*, 2012 WL 71695 (N.D.W.Va. Jan. 10, 2012)(finding that "defendants had not violated Parker's First Amendment rights by refusing to allow him to pray with other Muslims because the restriction was rationally related to a legitimate penological interest in security"); *Bryan v. Capers*, 2007 WL 2116452 (D.S.C. July 19, 2007)(dismissing First Amendment and RLUIPA claim where inmate was denied daily group prayer because the institution did not have a secure place for daily group prayer and inmate was allowed individual daily prayer); *also see Baranowski v. Hort*, 486 F.3d 112, 124-25 (5th Cir. 2007)(refusal to allow Jewish inmates to congregate when rabbi or outside volunteer was not present, was not a substantial burden under RLUIPA); *Muhammad v. Arizona Department of Corrections*, 2013 WL 3864253, * 4 (D.Ariz. July 25, 2013)("Allowing any group of inmates to congregate five times every day, even for prayer, creates potential security risks."); *Rodgers v. Shearidin*, 2011 WL 4459092, * 7 (D.Md. Sept 22, 2011)("Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings"). Former Chaplain Gerald Connors declared that daily group prayer was not allowed at FCI McDowell due to security concerns that existed when inmate are unsupervised in groups. (Document No. 69-3.) Chaplain Connors explained that policy prohibited group prayer at locations other than those areas designated and equipped for  group prayer. (*Id.*) Chaplain Connors stated that prayer at designated areas was necessary so the area could be more closely monitored by Religious Services staff. (*Id.*) Finally, Chaplain Connors stated that allowing group prayer at other locations would require additional staff supervision and Religious Services did not have enough staff to supervise all of the group prayers from all faith groups throughout FCI McDowell. (*Id.*)

Second, the undersigned will consider Plaintiff's claim that for a short period of time he was prohibited from bringing a specific translation of the Quran (Noble Quran or Hilali-Khan translation) into the Chapel. A thorough review of Plaintiff's Complaint and Exhibits reveals that Plaintiff does not complain that he was prohibited from possessing the Noble Quran or that all Qurans were prohibited in the Chapel. Defendants acknowledge that Plaintiff may have been prevented from taking a copy of the Noble Quran into the Chapel for a short period of time. Defendants explain that there was confusion by prison staff because the Noble Quran is not purchased for Chapel use or stocked in the Chapel library because the Noble Quran is "considered an extremist translation of the Quran." (Document No. 69-4.) A review of the record reveals that FCI McDowell never prohibited

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 69), **DISMISS** Plaintiff's Complaint (Document No. 1 and 46.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

---

all Qurans from the Chapel, for study, or possession by inmates. An inmate has no right under the First Amendment or RFRA to a preferred translation of the Quran. *See Earl v. Gould*, 2006 WL 983887 (W.D.N.C. April 11, 2006)(finding that the inmate's rights under RLUIPA were not violated where the inmate had an available Quran, but was not provided a specific verison of the Quran); *Low v. McGinness*, 2012 WL 537491, * 5 - 6 (E.D. Cal. Feb. 17, 2012)(dismissing inmate's claims under RLUIPA and First Amendment where the inmate was provided an English translation of the Quran, rather than the requested Arabic translation, and inmate was not prevented from possessing his own devotional material).

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this

Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 27, 2015.

R. Clarke VanDervort
United States Magistrate Judge