```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD


SAIED MOUSA RAMADAN,

       Plaintiff,

v.                                  Civil Action No: 1:14-25757

FBOP, et al.,

       Defendants.
```

## MEMORANDUM OPINION AND ORDER

By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge submitted his proposed findings and recommendations ("PF&R") on August 27, 2015. (Doc. No. 81). In his PF&R, Magistrate Judge VanDervort recommended that the court grant defendants' motion to dismiss or in the alternative, motion for summary judgment, dismiss plaintiff's complaint, and remove the matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to the PF&R. Plaintifff timely filed objections to the PF&R on September 16, 2015. (Doc. No.

1

82). With respect to those objections, the court has conducted a <u>de novo</u> review. However, because plaintiff's objections are without merit, the court grants defendants' motion to dismiss and/or for summary judgment and dismisses plaintiff's complaint.

**I.     Background**

Plaintiff, Saied Mousa Ramadan, is a federal inmate formerly incarcerated at the Federal Correctional Institution located at McDowell, West Virginia ("FCI McDowell"). On October 3, 2013, plaintiff, acting <u>pro se</u>, filed a complaint alleging violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). In his complaint, plaintiff, a practicing Muslim, alleges that defendants, the Federal Bureau of Prisons ("BOP") and employees thereof, violated his constitutional rights by denying him the opportunity to participate in congregational prayer five times a day and by implementing a ban on Noble Qurans.

In his disposition of plaintiff's complaint, Magistrate Judge VanDervort made the following specific recommendations: 1) that the court dismiss defendants Samuels, Eichenlaub, and Atkinson for lack of personal jurisdiction; 2) that plaintiff's claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") be dismissed because the RLUIPA provides a cause of action only against state actors, not federal actors; 3) that

plaintiff's Bivens claim against all defendants in their individual capacity be dismissed; 4) that all claims save for the alleged bans on congregational prayer five times daily and the Noble Quran be dismissed for failure to exhaust; 5) that plaintiff's claim for money damages for emotional and psychological harm be dismissed; 6) that plaintiff's claim for money damages under the Religious Freedom Restoration Act ("RFRA") be dismissed as there is no right to relief of that type under RFRA; 7) that plaintiff's claim for injunctive relief be dismissed on mootness grounds given that plaintiff is no longer incarcerated at FCI McDowell; and 8) that any claim for money damages under Bivens be dismissed because there is no right to money damages for First Amendment claims.  Having so recommended, Magistrate Judge VanDervort determined that he need not consider the other grounds for dismissal advanced by defendants. Nevertheless, in a footnote, he did briefly consider the merits of plaintiff's exhausted claims concerning congregational prayer and the Noble Quran and found both to be without merit. Plaintiff objects to Magistrate Judge VanDervort's recommendation regarding these claims.

## II.  Analysis

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

3

O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  As one court explained:

> With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment.  See Cruz v. Beto, 405 U.S. 39, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972).  That retained right is not unfettered.  Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution.  See Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

Rodgers v. Sheardin, Civil Action Nos. CCB-09-1962, CCB-103110, 2011 WL 4459092, *7 (D. Md. Sept. 22, 2011).

    *A.    Congregational Prayer*

Plaintiff disagrees with the magistrate judge's conclusion that FCI McDowell's refusal to allow congregational prayer five times a day violates his equal protection and/or First Amendment rights.  Specifically, he contends that defendants "have failed to put forth even one feasable [sic] and actual example of their reasons" for doing so.  Objections at p.2.  Ramadan is simply incorrect.  Defendants cited several reasons for its policy surrounding congregational prayer.  Plaintiff just doesn't agree with them.

Gilbert Nash, the Chaplain at FCI McDowell, testified as follows:

> 4.    FCI McDowell's policy on group prayer is as follows:

4

        COMMUNITY/GROUP PRAYER: Inmates are only allowed to pray as a group within the Chapel (FCI) or Multipurpose Room (Camp) or outdoor worship areas during times scheduled by the Religious Services Department.  Community/group prayer is not permitted in areas other than those designated by Religious Services.

5. This policy is an all-inclusive policy and there are no exceptions for any religious group.

6. FCI McDowell's group prayer policy prohibits inmates from gathering together in groups outside of those areas designated by Religious Services because of the security concerns that exist when inmates are unsupervised in groups.

7. When inmates group up throughout different areas of the institution, whether for prayer or other reasons, the potential for violence escalates. Grouping of inmates can be an actual or perceived sign of a show of force against other inmates and/or staff, and also creates security concerns for the inmates involved.  For example, Muslim inmates performing salat prayers must lie in a prone position during some of the prayer.  This could put those inmates at an increased risk for assault because they are not attentive to their surroundings and are in a vulnerable position. Other inmates may also perceive these group prayers, in areas not designed or designated for such, as a way of proselytizing other inmates to join the group and could create additional tension between groups because of the location of the meetings.

8. The policy prohibiting group gatherings for prayer at locations other than those areas designated and equipped for the group helps maintain the security of the institution.

9. [The] FCI McDowell policy on group prayer does allow religious group prayer at the designated area where it may be more closely monitored by

5

       Religious Services staff.  The designated area is appropriate and designed for group meetings and prayer.  To allow all religious groups to gather in groups at other locations, not specifically designed for groups, in the institution without supervision is not in the best interest of the security and good order of the institution. Furthermore, allowing group prayer by inmates at any location they choose would be disruptive to the normal operation of the facility including work assignments, housing units, and recreation.

10. Additionally, allowing group prayer at other locations would require additional staff supervision and impact the budget of the institution.  Religious Services does not have enough staff to supervise all of the group prayers from all faith groups throughout multiple locations of the facility.  It also could affect other inmates who would be required to move out of common areas when the inmates were involved in group prayers.  Additionally, a chain reaction is likely to occur where other faith groups would demand additional time and places to meet for group prayer throughout the day, creating additional staffing and security concerns.

11. Muslim inmates at FCI McDowell are provided numerous opportunities to practice their faith, including weekly Jumu'ah study and prayer every Friday in the Chapel; an additional weekly study time in the chapel; the 29-30 day yearly observance of Ramadan where Muslim inmates gather daily for group prayer time and study, and depending upon the time of sun set are allowed to go to the dining hall for a late dinner; a separate yearly ceremonial meal; ability to purchase and use prayer rugs in their cells or in the Chapel; use of prayer oils; ability to wear religious clothing such as the Kufi; and individual prayer opportunities in their cells or work areas.  In addition to the above, inmates can approach their workplace supervisors to see if it is feasible to be allowed prayer time at work.  If not, they can choose to go back to their cells on the move prior to prayer time and pray at that time.  They may also request to be moved to

        another job, if they believe their job could interfere with prayer time.

12. In late February 2012, Plaintiff filed an Informal Resolution Form ("BP-8") indicating that he was a Muslim and was not being allowed to pray in congregational prayer five times per day. He stated that BOP guidelines allowed the congregational prayers.

13. I responded to the BP-8. In the response, I noted that there were BOP guidelines on Islam that indicated the following:

    - Inmates should have the opportunity to pray five times daily

    - Other than Jumu'ah, it is recommended that prayers be made individually or in very small groups (2 or 3 inmates) throughout the day

    - Prayers can be made at work detail sites, school or units during break times

    - This requires a clean area, prayer rug or clean towel to cover the floor

14. It was explained that while the guidelines allowed plaintiff to pray five times per day, that the guidance provided several options for an institution to adopt to allow an inmate to carry out the prayers. It did not mandate all of the options be allowed. It was explained that FCI McDowell chose the individual prayer option and only allowed group prayer in the chapel. However, it was explained that individual prayer was always permitted in his cell and on worksites at the discretion of his worksite supervisor.

Declaration of Gilbert Nash, January 21, 2015 ¶¶ 4-14 (Exhibit 2 to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment). Gerald Connors, another of the chaplains at FCI McDowell during the relevant time period, testified

7

similarly. See Declaration of Gerald Connors, January 16, 2015, ¶¶ 4-12 (Exhibit 3 to Defendants' Motion for Summary Judgment) (Doc. No. 69-3).[1]

Notwithstanding plaintiff's assertions to the contrary, the foregoing demonstrates that defendants have explained the reasons for FCI McDowell's policy with respect to congregational prayer. Furthermore, those reasons are legitimate. "The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977); see also Muhammad v. Arizona Dept. of Corr., No. CV-11-1890-PHX-SMM(LOA), 2013 WL 3864253, *4 (D. Ariz. July 25, 2013) (dismissing prisoner's claim under First Amendment and RLUIPA based upon denial of congregational prayer five times daily because "[a]llowing any group of inmates to congregate five times every day, even for prayer, creates potential security risks"); Parker v. Trent, Civil Action No. 1:10CV120, 2012 WL 71695, *1 (N.D.W. Va. Jan. 10, 2012) (holding jail did not violate prisoner's "First Amendment rights by

---

[1] Indeed, Chaplain Connors, now the Supervisory Chaplain at FCI Berlin, testified that FCI McDowell's policy regarding group prayer was consistent with the policy at FCI Berlin. Connors Decl. at ¶ 6.

refusing to allow him to pray with other Muslims because the restriction was rationally related to a legitimate penological interest in security"); Rodgers v. Sheardin, Civil Action Nos. CCB-09-1962, CCB-103110, 2011 WL 4459092, *7 (D. Md. Sept. 22, 2011) (no First Amendment or RLUIPA violation where prisoner was not allowed to attend communal worship while on administrative segregation because "[r]estricting group meetings may be necessary to prevent the possibility of riots or gang meetings"); Lee v. Gurney, Civil Action No. 3:08cv99, 2010 WL 5113782, *5 (E.D. Va. Dec. 9, 2010) (granting judgment in defendants' favor on prisoner's equal protection claim where he had "not submitted evidence that other religious groups besides Sunni Muslims were permitted to conduct religious services on the recreation yard"); Jackson v. McBride, Civil Action No. 5:06-cv-00518, 2007 WL 2815447, *8 (S.D.W. Va. Sept. 24, 2007) (finding no RLUIPA or First Amendment violation because the prison's policy restricting Muslim inmates from gathering on the outdoor recreation yard for group prayer was "in furtherance of a compelling governmental policy that order and safety be maintained"); Bryan v. Capers, C/A No. 8:06-cv-255-GRA-BHH, 2007 WL 2116452, *5 (D.S.C. July 19, 2007) (holding that, in context of evaluating inmate's First Amendment and RLUIPA claims, denial of plaintiff's request for daily group pray was rationally related to the legitimate penological interest of security where prison did not have a

secure place for daily group prayer and individual prayer was permitted)

Furthermore, Ramadan's equal protection claim regarding the policy on group prayer fails because it is undisputed that the policy is applied uniformly. <u>See</u> Nash Decl. at ¶ 5, 26; Connors Decl. at ¶¶ 5, 18 ("[The] FCI McDowell policy is universal to all religious groups. Group prayer is not allowed by any group except in the prescribed areas."). According to Nash, he has "stopped both Muslim and Christian groups from engaging in group study and prayer in the recreation yard in the institution." Nash Decl. at ¶ 26. Plaintiff does not point to another group that is allowed to practice congregational prayer in violation of the policy.

> Almost any prison rule is likely to affect some religions more than others, but so long as the justification for the rule is reasonable and is not <u>intended</u> to target a particular religious group, it does not violate the Constitution, under either the free exercise clause or the equal protection clause.

<u>Turner v. Hamblin</u>, 995 F. Supp. 2d 859, 862 (W.D. Wisc. 2014).

To the extent plaintiff argues that the BOP's guidance with respect to Muslim daily prayer creates a mandatory obligation on the part of the BOP to allow inmates to pray "in very small groups (2 or 3 inmates)" he is mistaken. The document relied upon is merely a set of <u>guidelines</u> to aid the BOP in their effort to accommodate inmate religious beliefs and practices - - and it

merely makes a "recommend[ation] that prayers be made individually or in very small groups." (emphasis added). The guideline at issue is written in the disjunctive, i.e., prison officials have a choice to offer either individual prayer or prayer in small groups. Based on the foregoing, plaintiff's objections concerning congregational prayer are **OVERRULED.**

      B.    Alleged Ban on Noble Quran

In his objections, plaintiff alleges that Magistrate Judge VanDervort "misconstrued" his claim regarding Noble Qurans. Objections at p.2. Specifically, he contends that his "Fifth Amendment right to equal protection under the law was violated in that Muslim inmates were banned from bringing their personally owned Qurans into the chapel – Qurans that the Muslim inmates were permitted to purchase and therefore own while no other similarly situated religious group ever faced such a ban." Id. He further accuses the BOP of fabricating a ban and lying. See id. at p.3. The BOP candidly admits that, for a short time, there was some confusion over allowing the Noble Quran in the chapel. However, a review of the record makes clear that plaintiff's rights, constitutional or otherwise, were not violated by the brief restriction.

According to Gerald Connors,

> 13. I do understand that Plaintiff alleges he was not allowed to bring the version of the Quran, called

11

   the Nobel Quran or Hilali-Khan translation, into the chapel for a brief period.

14. This version of the Quran, called the Nobel Quran or Hilali-Khan translation, is a controversial translation of the Quran that many believe contains radical notes and parentheticals associated with Jihad.

15. Because of the controversy regarding this particular translation of the Quran, it is not purchased for the chapel, nor is it stocked in the chapel library.  Admittedly, there was some confusion for a few weeks as to whether this translation was allowed in the chapel.  Based on the verbal guidance Chaplains Nash and I had received earlier from the BOP's Central Office, we believed this translation was not allowed in the chapel, but that inmates could purchase and possess this particular translation.  I do not believe that I had told any of the inmates this yet.

16. It was because of this confusion that Chaplain Nash called the BOP Central Office prior to responding to Plaintiff's May 31, 2012 BP-8.  The guidance he received from the Central Office Religious Services was that any material that could be purchased was allowed in the chapel, but that only approved material could be used for teaching in the chapel.

17. Qurans were never banned from FCI McDowell.  Copies of the Quran were available in the chapel and inmates could purchase other translations.  Though there were a few weeks of confusion with regard to the Nobel Quran translation, it was determined that inmates could continue to purchase and possess the translation and bring it to chapel at FCI McDowell.  Nonetheless, like any other study, materials used in teaching needed prior approval by the Chaplains.

Connors Decl. at ¶¶ 13-17. Chaplain Nash's declaration was substantially similar to that of Chaplain Connors. See Nash Decl. at ¶¶ 16-25.

The foregoing makes clear that there was never a "ban" on the Noble Quran. There is no allegation, much less evidence, that plaintiff's copy of the Noble Quran was ever confiscated or taken from him. Furthermore, FCI McDowell was under no obligation to make that specific translation available in the chapel. See, e.g., Earl v. Gould, No. 1:03CV109-1-MU, 2006 WL 983887, *2 (W.D.N.C. Apr. 11, 2006) ("[N]ot being provided with a specific translation of a religious text does not substantially burden Plaintiff when Plaintiff was provided several common versions of the religious text."). Therefore, distilled to its essence, plaintiff's complaint is that for a few weeks he was not allowed to bring his copy of the Nobel Quran into the chapel. However, an inmate has no right under the First Amendment or RFRA to a preferred translation of the Quran. Nor is there any indication that Ramadan's inability to bring his copy of the Nobel Quran into the chapel for a few weeks prohibited him from practicing his religion, especially given that copies of other translations of the Quran are available in the chapel.

Even if plaintiff were to somehow establish that he has a constitutional right to have his copy of the Nobel Quran in the chapel (and the court concludes he has not), the brief

13

interruption of the practice does not rise to a First Amendment or RFRA violation. See, e.g., Standing Deer v. Carlson, 831 F.2d 1525, 1528-29 (9th Cir. 1987) (prison regulation banning wearing of headgear, including religious headbands, in inmate dining hall did not violate Native American inmates' constitutional right to free exercise of religion where headgear ban was logically connected to legitimate penological interest); Williams v. Bragg, No. 12-50965, 537 F. App'x 468, 468 (5th Cir. July 29, 2013) ("A prisoner's constitutional right to freedom of religion is not violated by the occasional inability to attend services."); Thompson v. Holm, No. 13-CV-930, 2015 WL 1478523, *6 (E.D. Wisc. Mar. 30, 2015) (removal of prisoner from Ramadan participation list, which resulted in him missing two Ramadan meal bags, did not constitute a substantial burden of prisoner's free exercise of religion because there was "no evidence that the brief interruption forced him to abandon one of the precepts of his religion or that he felt a substantial pressure to modify his beliefs."); Vann v. Fischer, No. 11 Civ.1958(KPF), 2014 WL 4188077, *11-12 (S.D.N.Y. Aug. 25, 2014)(finding that prison's requirement that religious beads be confiscated, examined, and approved before their introduction into the corrections system (the "Approval Process") passes muster under the First Amendment even when Approval Process took approximately two weeks); Halloum v. Ryan, No. CV 11-0097 (PHX-RCB), 2014 WL 1047144, *17 (D. Ariz.

14

Mar. 18, 2014) (preventing Muslim inmates from bringing their prayer rugs into the dining room on two occasions during Ramadan, thereby prohibiting them from praying, did not constitute a substantial burden on prisoners' free exercise rights); Coleman v. Allen, Civil Action No. 2:09-CV-311-TMH, 2012 WL 4378086, *9 (M.D. Ala. Sept. 7, 2012) (finding that prisoner had "failed to demonstrate that the occasional interruption of religious ceremonies unduly burdened his ability to engage in the free exercise of his religion.").

Finally, plaintiff's attempt to resurrect his unexhausted retaliation claim[2] regarding the restriction on the Nobel Quran under the guise of an equal protection claim likewise fails. Ramadan has failed to offer any evidence that defendants acted with a discriminatory purpose. See Patel v. United States Bureau of Prisons, 515 F.3d 807, (8th Cir. 2008) ("Even assuming that Patel has been treated differently from similarly-situated inmates, Patel has not presented any evidence suggesting that the Bureau Defendants acted with a discriminatory purpose."). The evidence shows that, for a short period of time, there was some confusion regarding whether the Nobel Quran was allowed in the chapel but that, after seeking guidance from the Central Office, plaintiff was allowed to bring his Nobel Quran into the chapel.

---

[2] Plaintiff argued that the restriction placed on the Nobel Quran was in retaliation for his complaints regarding congregational prayer.

For all these reasons, plaintiff's objections regarding the Nobel Quran are **OVERRULED**.

**III. Conclusion**

Accordingly, the court **OVERRULES** petitioner's objections to Magistrate Judge VanDervort's PF&R. The court adopts the factual and legal analysis contained within the PF&R, **GRANTS** defendants' motion to dismiss, or in the alternative, motion for summary judgment, **DISMISSES** plaintiff's complaint, and **DISMISSES** this matter from the court's active docket.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to plaintiff, pro se.

**IT IS SO ORDERED** on this 28th day of September, 2015.

ENTER:

David A. Faber
Senior United States District Judge